MAGGIE E. WEST AND MARY WEST v. WILLIAM A. MAHANEY AND ANDREW G. BYERS, AND SAME v. BELLA MAHANEY AND WILLIAM A. MAHANEY.

[Two cases.]

*Reformation of deed—Mistake.*

Where a grantee contracts for and supposes that he is purchasing half of a lot of a specified depth, and that a fractional lot in the rear is separate and distinct from the land so purchased, and the deed describes the land as half of the lot, without specifying its depth, and on a survey being made some two or three years afterwards, during which time the grantors have occupied the fractional lot, it is discovered for the first time that the land as conveyed covers said fractional lot, equity will correct the mistake, and reform the deed so as to carry out the agreement of the parties.

Appeals from Saginaw. (Gage, J.) Submitted on briefs May 5, 1891. Decided May 15, 1891.

Bills to reform deeds. Defendants appeal. Affirmed. The facts are stated in the opinion.

*Harris & Kendrick,* for complainants, contended:

1. The mistake in question is one of fact, and not of law; citing *McCasland v. Insurance Co.*, 108 Ind. 130.

2. It is clear from the proofs that the land in question was not within the understanding of the parties contracting, and this brings the circumstances within the case of *Damm v. Moon*, 48 Mich. 510; and see *Scadin v. Sherwood*, 67 Id. 230.

3. This case is ruled by *Conlin v. Masecar*, 80 Mich. 139.

*Tarsney & Weadock*, for defendants, cited no authorities.

MORSE, J. The proofs in these two cases were taken together, and in the court below and here have been heard as one.

The bills were filed to correct and reform certain deeds of conveyance. At the time the deeds were made the complainant Maggié E. West was the owner in fee of lot 5, in block 23, of Glasby, Gallagher & Little's addition to the city of East Saginaw. John and Mary West, the father and mother of Maggie E. West's husband, had a life-lease of the property. The old people lived on lot 6 of the same block, and used the back part of lot No. 5 for a garden. Lot 6 was east of lot 5. On the west of lot 5 lived a Mr. Hulsizer, who owned lot 4 of block 23. Lot 4 extended north from Millard street, on which all of these lots fronted, 132 feet. Lots 5 and 6 ran back further than lot 4, to the section line on the north. The Wests testified that they supposed lot 5 extended no further north than lot 4; and it is established by the evidence that there was an old fence running part way across lot 5, on a line with the north boundary line fence of Hulsizer, which last-named fence was the northern boundary of lot 4. William C. West, the husband of Maggie E. West, testifies that he made the bargain with William A. Mahaney to sell him the west half of lot 5, as he supposed it was bounded on the north, to wit, by this fence and a row of currant bushes in line with Hul-

sizer's boundary line on lot 4· that he pointed out the supposed boundary to Mahaney, who fully understood it. The deed of these premises was executed by John and Mary West and Maggie E. West to Bella Mahaney, the wife of William A. Mahaney, and was so drawn as to convey to her the whole west half of lot 5. The land north of the fence the Wests supposed to be a fractional lot, and not a part of lot 5, and they did not intend to convey it by this deed, and claim that it was a mistake of the parties in so conveying it. This deed was made April 28, 1887. Afterwards the defendant Byers bargained for the east half of the lot with the same supposed northern boundary. This deed, by the same mistake, executed on the 11th day of May, 1887, conveyed the whole east half of lot 5. Before the commencement of these suits Byers deeded his purchase to the defendant William A. Mahaney.

These bills were filed to correct these mistakes, and to reform the deeds, so that they would convey a depth of but 132 feet north from Millard street, which would place the northern boundary where the parties supposed it to be when the deeds were made. John West was a party complainant when the bills were filed, but died before decree in the lower court.

Upon the proofs taken and hearing had, the circuit court for the county of Saginaw, in chancery, made decree in favor of the complainants in both cases, from which the defendants appeal.

Although some defense is attempted to be made by the Mahaneys, the proofs are overwhelmingly in favor of the complainants. Mr. William A. Mahaney, who did all the business in his wife's purchase, himself testifies that William C. West, who was acting for his wife and father and mother, told him, before the deed was made, that there was a "small fraction" back of the lot that did

not belong to it, although he denies that the fence or currant bushes were pointed out as the north boundary line of his purchase. And he also testifies that a few days after the making of the deed West came to him, and showed him where the boundary line was.

"He says, 'Your lot don't run only to those currant bushes.' He says, 'This piece of property down here is a fractional piece, that don't belong to your lot at all.' I says, 'All right, if it don't belong to my lot I don't want it.'"

For two or three years after the elder West used it for a garden, and had the fruit upon the currant bushes and some fruit-trees upon it.

Mahaney admits that he did not suppose that it belonged to him until, upon getting a surveyor there to run out his line in building a division fence between lots 5 and 6, he found that his deeds called also for this land, before that time supposed to belong to a fractional lot, and not to lot 5. He was much surprised when the discovery was made, and at first hesitated about taking it, but finally made up his mind to take it because it was deeded to him. Upon the trial he seemed to rest his case upon his testimony that he told West, in Tarsney & Weadock's office, at the time the deed was drawn, when West said that there was a fractional lot at the end of the land he had bought, that he wanted half the lot, whatever it was. But it is evident from all the testimony that Mahaney supposed that he was buying half of a lot 66 feet wide and 132 feet deep; that all the parties acted upon this supposition for two or three years, until a surveyor discovered that there was no fractional lot back of lot 5, and that lot 5 included the land supposed to be a fractional lot, and which had ever since the sale been in the possession and use of the complainants. The other half of the lot is governed by the same circumstances and

facts, as Byers bought, as all supposed, the same depth of lot as Mahaney did, and recognized the possession of the Wests as lawful until the discovery of the surveyor.

The decree in each case must be affirmed, with costs.

The other Justices concurred.